## PROXIMATE CAUSE OF INJURY TO A LOCOMOTIVE FIREMAN.

Circuit Court of Lucas County.

CARL E. POWERS v. HOCKING VALLEY RAILWAY CO. AND LAKE
SHORE & MICHIGAN SOUTHERN RAILWAY CO.

Decided, June 26, 1909.

*Negligence—Fireman Suffered Injuries in Carelessly Stepping from his
Engine—Proximate Cause—Placing Guard Rails and Lights on
Bridges not a Duty of Railway Company—Section 3305, Providing
Joint Liability for Lessor and Lessee of Railway Tracks.*

1. Where a fireman is injured in stepping off his engine backwards and
   in the dark, and without making any effort to discover where he
   was stepping, the fact that his reason for getting off was that the
   engine was out of repair and needed attention does not constitute
   the proximate cause of his injury or render the railway company
   liable therefor.
2. Nor does the fact that the engine happened to be standing at the time
   on a bridge which was unlighted and not provided with guard-
   rails add to the responsibility of the company or eliminate the
   element of plaintiff's own negligence as to his safety.

KINKADE, J.; PARKER, J., and WILDMAN, J., concur.

The court of common pleas directed a verdict in favor of both
defendants at the close of the plaintiff's evidence. Referring to
the negligence charged against the Lake Shore, we think it very
doubtful whether the amended petition stated a cause of action,
and if the trial court had sustained the demurrer which was
filed by the Lake Shore we probably would have affirmed its
action in this regard. There is no evidence of any lease of the
Lake Shore tracks to the Hocking Company. True, there is an
admission in the record that the Hocking Company at the time of
the injury to plaintiff was using that part of the Lake Shore
property with the knowledge and consent of the Lake Shore.
We do not think the section of the statute (3305) cited, has any
application to the case at bar. Even if a lease were shown, the
provision of this section are to cover obligations of the company

to the public, as was said by Judge Taft in the 72d Fed. Rep., 745 and 753, and do not apply to a case 'such as is here presented. The plaintiff was in no sense an employe of the Lake Shore Company and that company did not owe to him the duty of exercising ordinary care in furnishing him a safe place to work. Upon careful consideration of the record we fail to find any evidence tending to show that the Lake Shore Company omitted any duty owing by it to the plaintiff, and our conclusion is that the trial court was correct in directing a verdict in favor of that company.

As to the Hocking Valley Company, the negligence charged was a defective engine, failure to light the bridge and failure to place guard-rails on the bridge. It is entirely clear that the defective grate bars can not in any way be regarded as the proximate cause of the plaintiff's injury. At most they merely explain why the plaintiff left his engine when he did. He might have left the engine for any one of many purposes, and if he had alighted as he did in this case the result would have been precisely the same. If a man jumps off an engine in the dark and in so doing goes over the side of a high trestle or bridge, it is not very material just what particular duty he was intending to perform. The plaintiff had a right to get off his engine whenever he so desired in the performance of any act connected with his work which might be proper for him to perform. Had he left the cab to oil some part of the engine or for any other purpose the same thing which happened here must have befallen him. As to the lighting and the guard-rail: It is too clear to need comment that had the bridge been lighted as plaintiff claims it should have been, then the absence of guard-rails would have been known to the plaintiff and in that event he would have assumed the risk of using the bridge in that condition. Hence the only complaint is the failure to light the bridge. Taking plaintiff's own story as to how he was hurt, and we have read the evidence with care, it is certainly difficult to comprehend how he could have possibly been more reckless of his own safety. No one can read his evidence and reach any other conclusion than that he stepped down out of the cab in the dark backwards without the slightest concern for his own safety. The company is not charged

with negligence in not furnishing lanterns for the use of its men
when in dark places, but the charge and claim is that places of
this kind should be lighted so that the railroad men may go with-
out the aid of lanterns, and if the company does not light all
places along its track, and especially places near a railroad yard,
then trainmen may assume that whenever and wherever the train
or engine chances to stop, that is a safe place to step off back-
wards in the dark, without taking any precaution to learn what
the real surroundings are. It scarcely seems necessary to do
more than to state such a proposition in order to make manifest
the unreasonableness of it. Railroading is hazardous work, and
it is common knowledge that railroad property is not generally
lighted. Switch and signal lights are not intended to light up the
yards, but are intended to indicate the position of switches and
targets. They are no more intended to illuminate railroad prop-
erty generally than the signal lights on vessels are intended to
light up the lake or the ocean. The railroad business in this
country is not in its infancy and the manner of moving trains
and cars is thoroughly known. The fact that railroad tracks and
trestles are not commonly lighted is well known, and it is also
common knowledge that the bridges and trestles are not provided
with guard-rails to keep the men from falling off. Neither are
there guard-rails on the tops of freight cars to keep brakemen
from falling off while running along the top of the train in the
dark. As has been said railroading is dangerous work at best,
and no one engaged in it is warranted in going heedlessly about
the discharge of duties requiring great care.

No system of fixed lights along a railroad property could afford
the protection to the men, with the constant changing of positions
of both men and cars, that is furnished by the individual lanterns
in the hands of the men. The universal custom on all well-man-
aged railroads is sufficient proof that the way the work is being
done is the practical way to do. The Legislature of Ohio has
enacted a great many laws for the protection of railroad employes
and the safety of persons and property being transported over
railroads, embracing the lighting and heating of cars, air brakes,
safety appliances, blocking of frogs, and a great many other
things which might be enumerated, and it is certainly worthy of

note that with all the attention this important subject of railroading has been given by the Legislature, no one has ever thought it necessary to require that railroad bridges and trestles must be lighted and equipped with guard rails so that train men who thoughtlessly step off the train in the dark at such points will not get hurt.

The Hocking Valley Company had no right to light this bridge or to place guard rails upon it, as it was the property of the Lake Shore Company. It will be said that this being true, then the Hocking Company had no right to use it in that condition. Had the bridge and the tracks been upon the property of the Hocking Valley Company, we do not think any obligation would have rested upon that company to light the bridge and erect the guard-rails as contended for by plaintiff.

That plaintiff alighted from the engine entirely of his own motion is evidenced from what he says he did and said at the time. He told the engineer what he was going to do and proceeded to do it. The record does not show what the engineer said. If the plaintiff had been allowed to leave in the bill of exceptions what was first printed there and afterwards erased (but still is in such form as it can be read), we think it would fall very far short of the effect claimed for it in argument concerning this conversation. At any rate, it is not now a part of the record, and we see no prejudicial error in the rulings of the court in this regard. Our conclusion is that the record discloses no omission of duty on the part of the Hocking Valley Company, hence the action of the court of common pleas in directing a verdict for that company was correct and the judgment entered thereon will be affirmed.